**FIRST NAT. BANK OF GAINESVILLE, GA., v. ROYAL INDEMNITY CO.**

**ROYAL INDEMNITY CO. v. FIRST NAT. BANK OF GAINESVILLE, GA.**

Circuit Court of Appeals, Fifth Circuit. May 5, 1928.

No. 4983.

1. Insurance ⊂⊃665(4)—Evidence held to establish amount awarded employer under policy insuring it against fraud or dishonesty of employee was less than it was entitled to.

In suit on policy insuring employer against loss by fraud, dishonesty, etc., of employee, evidence *held* to establish that amount awarded employer thereunder was substantially less than it was entitled to recover.

2. Insurance ⊂⊃648(1)—Evidence as to different policy held properly excluded in suit on policy insuring employer against fraud or dishonesty of employee.

In suit on policy insuring employer against loss by fraud or dishonesty of employee, evidence as to another policy theretofore issued and having ceased to be in force *held* properly excluded, on ground pleadings did not assert any claim that fraud or dishonesty of employee caused employer to lose any pecuniary benefit resulting from existence of such policy.

Appeal and Cross-Appeal from the District Court of the United States for the

Northern District of Georgia; Samuel H. Sibley, Judge.

Suit by the First National Bank of Gainesville, Ga., against the Royal Indemnity Company. From the decree, plaintiff appeals, and defendant cross-appeals. Reversed and remanded, with directions.

A. C. Wheeler, of Gainesville, Ga., for appellant and cross-appellee.

Frank C. Wright, of Gainesville, Ga., for appellee and cross-appellant.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. The objects of this suit, brought by the appellant, First National Bank of Gainesville, Georgia, against the appellee, Royal Indemnity Company, were to have reformed a policy of insurance in the sum of $5,000 issued by the appellee, and the recovery by appellant from appellee of that sum, with interest thereon from April 22, 1924. The suit resulted in a decree granting the reformation relief prayed for and adjudging that appellant recover of the appellee the sum of $853.-50, with interest. So far as the decree granted reformation relief, it is not complained of. The appellant complains of the decree on the ground, among others, that the amount awarded was greatly less than appellant was entitled to recover. The appellee, which sued out a cross-appeal, complains of the decree on the ground that, under the evidence adduced, appellant was not entitled to any recovery against the appellee.

The pleadings and evidence showed the following: The appellee issued the policy in suit on February 26, 1923, insuring the appellant in the sum mentioned against loss by fraud, dishonesty, etc., of W. E. McKinney, an employee, which policy by renewal was continued in force until April 23, 1924, when it was discovered that McKinney was short with appellant in a sum in excess of $13,000. McKinney was continuously an employee of the appellant for a period of about 10 years preceding the discovery of his shortage. The appellant had a similar policy, also in the sum of $5,000, issued by the American Surety Company, which was in force from July 27, 1920, to the date of the discovery of McKinney's shortage. Throughout the time covered by appellee's policy, and from 1920 until the date of the discovery of his shortage, McKinney was in charge of appellant's individual ledger, covering the accounts of customers whose names began with the letters from L to Z. False entries made on that ledger during the time appellee's policy was in force indicated defalcations by McKinney in excess of the amount of appellee's policy. There was no direct evidence as to when the defalcations actually occurred, except the testimony of McKinney, who was a witness for appellee.

The opinion rendered by the District Judge shows that his conclusion as to the amount of the recovery awarded to appellant was based on testimony of McKinney, though that opinion states that testimony was subject to criticism. It is quite apparent that that testimony was lacking in probative value. The following part of the opinion mentioned indicates how the amount awarded was arrived at:

"According to his testimony, his defalcations were continuous over the 9 years or more, and were from $1,200 to $1,500 per year. The average, figured at 9 years, was $125 a month, which was probably not far from correct, as he was using it to pay interest and taxes, which recur with remarkable regularity from year to year. Taking this as the key to the situation, 13⅔ months covered by this bond represents a loss of $1,707. The defendant would be liable for this amount, unless it has been partly paid by the other bonding company. Proof as to what the other company actually paid for is not satisfactory. I cannot tell what items they paid with any satisfaction to my own mind. The period covered by that bond indicates that $125 a month would run over $5,000, so that the bonding company did not pay the entire loss; but I cannot tell what part of it was intended to be allocated to the period of the present bond and what to the preceding period. I see nothing fairer to do than to treat the other company as having paid the half that it should have paid of the loss occurring during the last 13⅔ months. Treating it as having paid its half, the present defendant is liable for the other half, which would be an amount of $858.50, for which judgment may be taken."

[1] We think the record shows that undue effect was accorded to the testimony of McKinney, especially in view of circumstances deposed to by witnesses of apparent credibility, which indicated that McKinney's defalcations occurred after the date in 1920 when he was transferred from the "A to K" ledger to the "L to Z" ledger, and of such statements as the following in McKinney's testimony: "It is no use to tell how much I took during the years 1920, 1921, and 1922, because I don't know; I can't give any

idea of the average." But, even if the evidence adduced warranted the finding made as to the amount of the loss resulting from McKinney's dishonesty during the period appellee's policy was in force, we think there was an absence of evidence warranting a finding that the payment made by the American Surety Company covered any part of the loss caused by McKinney's embezzlements during the period covered by appellee's policy. The only evidence as to what was done under the American Surety Company policy was that the full amount of that policy was paid after appellant made to that company a proof of loss which indicated defalcations by McKinney during the period when the American Surety Company policy was in force, and before appellee's policy was issued, amounting to more than $5,000. It was not shown that the American Surety Company, in paying the full amount of its policy, was influenced by such evidence as was adduced in the trial which resulted in the decree under review.

Nothing contained in the record negatives the conclusions that evidence available to the American Surety Company prior to its payment of the full amount of its policy showed that during the time that policy was in force, and prior to the issue of the appellee's policy, McKinney's dishonesty as an employee caused losses to the appellant amounting to more than $5,000; that the American Surety Company, in paying that amount, did so without any intention of any part of it being applied on losses so incurred after appellee's policy was in force; and that appellant was at liberty to apply the amount so paid on losses incurred before appellee's policy was in force. We conclude that it fairly appears from the record that the amount awarded to appellant was substantially less than the evidence adduced indicated it was entitled to recover. We are not unmindful of the fact that the evidence adduced as to the amount of loss incurred during the period appellee's policy was in force might have been decidedly more satisfactory. It seems that the exercise of due diligence should result in more satisfactory evidence on that subject being produced in another trial.

[2] Appellant complains of the court's exclusion of evidence as to a policy insuring it against loss by reason of McKinney's dishonesty, which was issued in 1918 and ceased to be in force in 1923. That ruling is sustainable on the ground that appellant's pleadings did not assert a claim that any fraud, dishonesty, etc., of McKinney caused

appellant to lose any pecuniary benefit resulting from the existence of the policy in question.

We think the case is properly disposed of by reversing the decree and remanding the case, with leave to each of the parties to amend its pleadings, and with direction that a new trial be granted. And it is so ordered.

Reversed.